

AMERICAN ACADEMY
OF FACIAL ESTHETICS

March 8, 2019

Jillian Blair Charles



Dear Jill,

American Academy of Facial Esthetics, LLC, an Ohio limited liability company (from now on referred to as the "Company"), is pleased to offer you employment with the Company. This contract is for the 2019 year only. Starting on April 9th, 2019 & ending on December 31, 2019.

You will report to the Company's executive management. We anticipate that your duties will include those commensurate with your position as shall be specified or designated by the President of the Company from time to time.

For your services rendered to the Company, the Company offers you a starting salary of $100,000 annually. Your salary will be paid by our normal payroll procedures (which presently provide for twice-monthly payments) while the Company actively employs you. Your salary and all other compensation paid to you by the Company will be subject to payroll tax withholding in the manner required by applicable federal, state, and local law.

While the Company actively employs you, the Company may, from time to time, pay you such discretionary bonuses as the Company's Board of Managers may, in its sole and absolute discretion, determine to be appropriate based on your performance and the performance of the Company. You hereby acknowledge that the Company has made no representation that any such discretionary bonus will ever be paid to you. No bonus paid or payable to you by the Company shall be deemed to be an increase in the amount of your base compensation for any purpose.

The Company may review and evaluate compensation and performance for all its employees from time to time depending on the circumstances and may adjust your or any other employee's compensation if the Company, in its sole and absolute discretion, determines that such adjustments are appropriate. The Company agrees that your base salary will not fall below the amount of your starting salary set forth above.

Upon your compliance with its expense reimbursement policy, the Company will reimburse you for business expenses that you incur directly in connection with your performance of services for the Company and approved by the CEO or COO.

EXHIBIT 1

Initial __JC__

The Company currently offers dental and vision insurance and other supplemental benefits that are subject to change based on open enrollment. The company does not currently offer health insurance. You hereby acknowledge that the Company has made no representation that it will ever offer any other employee benefit plan or program. New employees are eligible after their 90-day trial period.

Our hours of operations on normal business days are 9 AM to 5 PM with a half hour lunch break slotted at some point during the day. We understand many choose to start the workday at 9:20 for a variety of reasons and that is something we have always allowed. Please keep this in mind though when it comes time for lunch, please use proper judgment on the length of the break

Our policy regarding days off is every full-time employee is entitled to 12 vacation days, five sick days & two personal days annually. Additionally we have agreed to an extra week of PTO (Five business days) bringing your total to 17 vacation days, five sick days & two personal days annually. **Vacation days must be scheduled five days in advance. Vacation/personal and sick days do not carry-over if not used before year end and are not paid out upon separation from employment.** In addition, we are closed for the following six legal holidays, New Year's, Memorial Day, Independence Day, Labor Day, Thanksgiving, and Christmas. Work from home days are only those that are assigned by the company to its employees. All personal appointments must be scheduled out of work time. Appointments may be scheduled in the early morning if you're here by 10:00 am or after 4:00 pm

You should be aware that your employment with the Company is for no specified period and constitutes "at will" employment. As a result, you are free to resign at any time, for any reason or no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without written notice. You will be in a temporary review period commencing on your first day of employment and ending on the 90th day of employment.

You should also be aware that Company employees are not permitted to make any unauthorized use of documents or other information in their employment with the Company that could properly be considered or construed to be confidential or proprietary information of another individual or company. Likewise, a Company employee may not bring with him or her onto the premises of the Company any confidential documents or another form of tangible information that relates to his or her prior employer's business and that are not owned by such employee or otherwise acquired by the Company.

You acknowledge that all property provided to you by the Company in connection with your employment shall be and remain the Company's property solely. You agree that, upon the termination of your employment with the Company, you shall promptly turn over to the Company all property and records (including all copies and summaries thereof) of the Company in your possession.

This offer of employment and your employment by the Company is subject to your signing the Company's Employee Confidential Information Agreement, a copy of which is enclosed.

You hereby acknowledge that (1) you have not relied upon any representations other than those outlined in this offer letter, and (2) this offer letter supersedes all prior and contemporaneous verbal or written agreements, understandings or communications between you and the Company concerning your employment. Any subsequent agreement or representation shall not be binding on the Company unless contained in a written instrument signed by you and the President of the Company.

Page 3

Initial  JC

If you choose to accept the Company's offer under the terms described above, please sign and date this letter in the space provided below and return it to me, along with the executed Employee Confidential Information Agreement, no later than April 1st, 2019. If we have not received your signed acceptance by such date, this offer shall be revoked and considered null and void. If you have any questions about this letter or its enclosures, please contact me.

The Company is an organization that has built an outstanding reputation for exciting, innovative and quality programs and services. Credit for this goes to every one of our employees. We look forward to your becoming part of our team.

Sincerely,

American Academy of Facial Esthetics, LLC

By: _____
David Malcmacher, Chief Executive Officer

Enclosure:   Employee Confidential Information Agreement

Acknowledged and accepted (please sign and date below and retain a copy for your records):

| Jillian Charles | JCharles | 3/13/19 |
|---|---|---|
| NAME | Signature | Date |

## NON-COMPETITION, NON-DISCLOSURE, NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

This Non-Competition, Non-Disclosure, Non-Solicitation and Confidentiality Agreement (the "Agreement") is made and entered into as of this 6th day of March, 2019, by and between **[name of employee]** (the "Employee"), American Academy of Facial Esthetics LLC (the "Company" or "AAFE"), and each of the Company's successors, related companies, assigns, and subsidiaries (the Employee and the Company are collectively, the "Parties").

WHEREAS, the Company is a multidisciplinary professional healthcare organization whose mission is teaching the best non-surgical and non-invasive facial injectable techniques to healthcare professionals worldwide. The AAFE is an umbrella organization comprised of physicians, dentists, nurses and other healthcare professionals committed to providing the best possible outcomes in areas of facial esthetics and facial pain treatment;

WHEREAS, the Employee will be given valuable training over many months by the AAFE which will enable the Employee to be qualified to perform services on behalf of the AAFE (the "Training");

WHEREAS, if the Employee was required to pay for the Training, the total cost of the Training would exceed Twenty-Five Thousand Dollars;

WHEREAS, in addition to the valuable Training, the Employee will have access to and become acquainted with customer lists, customer buying histories, habits, preferences, pricing information, marketing information, product/service development strategies, the identity of and other confidential and proprietary information related to vendors, sales methods and procedures, and services utilized and developed by the Company, the business plan of the Company, the business strategy of the Company, and other confidential and proprietary information of the Company (the "Confidential Information"); and

WHEREAS, the execution of this Agreement is a condition of the Employee's employment with the Company and the initiation of the Training;

NOW, THEREFORE, in consideration of the Employee's employment by the Company and the access that is granted to the Employee by the Company to the Company's proprietary, valuable, and confidential information, the Employee hereby covenants and agrees as follows:

1. <u>Representations of the Employee</u>. The Employee represents and warrants that the Employee's employment with the Company does not violate the provision of any covenant not to compete or other restrictive agreement. The Employee further represents that the Employee is not subject to any employment, confidentiality, or other agreement that would prevent the Employee from fully satisfying the Employee's duties under this Agreement or that would be violated if the Employee completes his or her duties under this Agreement. The Employee finally represents and warrants that the Employee will not disclose or use proprietary information belonging to a former employer or other entity without its written permission.

2. <u>Consideration</u>. The Employee acknowledges and agrees that solely by virtue of the Employee's employment with the Company, the Employee will acquire Confidential Information, and that, but for such employment, the Employee would not have had access to the Confidential Information. The Employee further acknowledges and agrees that the execution of this Agreement is a condition of his or her employment with the Company. Finally, the Employee acknowledges and agrees that the execution of this Agreement is a condition precedent to the Training.

3. <u>Best Efforts/Duty of Loyalty</u>. Unless the Employee has the written consent of the Company, the Employee shall devote all of his or her business skills, business time, and business attention solely and exclusively to the Company and in furtherance of the business and interests of the Company. The Employee further agrees to notify the Company if the Employee becomes aware that other Company employees are failing to devote their best efforts to the Company.

4. <u>Training Commitment</u>. The Employee agrees and acknowledges that the Training is valuable and that the AAFE is providing the Employee the Training, free of charge, in return for the Employee's commitment to remain employed by the AAFE for two years from the date this Agreement is executed (the "Training Commitment"). Employee understands and agrees that he/she must reimburse the AAFE the cost of the Training if the Employee's employment ends prior to the conclusion of the Training Commitment for any of the following reasons:

   (i) Employee attends, but fails to adequately complete the Training;

   (ii) Employee is terminated for Cause by the AAFE prior to completing the Training Commitment; or

   (iii) Employee resigns from his/her employment with the AAFE, for any reason, prior to completing the Training Commitment.

For purposes of Paragraph 4, "Cause" includes, but is not limited to, dishonesty, fraud, embezzlement, gross negligence, a failure or inability to perform assigned duties or meet established performance goals, violation of the AAFE's policy against discrimination or harassment, or other willful misconduct.

5. <u>Reimbursement Amount</u>. Employee shall reimburse the AAFE for the cost of the Training within thirty (30) days of the termination of his/her employment with the AAFE for any of the reasons set forth in Paragraph 4. The Employee's reimbursement amount shall be as follows:

   (i) Twenty Thousand Dollars ($20,000) if the Employee's employment with the AAFE ends pursuant to Paragraph 4 before the completion of six (6) months of employment;

   (ii) Fifteen Thousand Dollars ($15,000) if the Employee's employment with

     the AAFE extends beyond six months, but ends pursuant to Paragraph 4 before the completion of (12 months of employment;

  (iii) Ten Thousand Dollars ($10,000) if the Employee's employment with the AAFE extends beyond twelve (12) months, but ends pursuant to Paragraph 4 before the completion of eighteen (18) months of employment; and

  (iv) Five Thousand Dollars ($5,000) if the Employee's employment with the AAFE extends beyond eighteen (18) months, but ends pursuant to Paragraph 4 before the completion of twenty-four (24) months of employment.

  6. <u>At-Will Employment</u>. Notwithstanding anything to the contrary contained herein, Employee agrees and acknowledges that he/she is an "at-will" employee of the AAFE and that his/her employment may be terminated at any time and for any reason by the Employee or by the AAFE. This Agreement does not alter, effect, or impact this at-will employment relationship and Employee agrees, understands, and acknowledges that his/her employment with the AAFE is for no specified period of time.

  7. <u>Non-Solicitation of Employees</u>. The Employee agrees that, during the Employee's employment, and for a period of six (6) months after the termination of the Employee's employment, whether voluntary or involuntary and whether with or without Cause, the Employee will not, directly or indirectly, except on behalf of the Company, solicit or accept if offered to the Employee, with or without solicitation, on the Employee's own behalf or on behalf of any other person or entity, the services of any person who is a current employee of the Company (or was an employee of the Company during the six (6) months preceding such solicitation), nor solicit any of the Company's current employees (or any individual who was an employee of the Company during the six (6) months preceding such solicitation) or consultants, to terminate employment or an engagement with the Company, nor agree to hire any current employee (or any individual who was an employee of the Company during the year preceding such hire) of the Company into employment with the Employee or any other person or entity.

  8. <u>Non-Compete</u>. The Employee agrees that, during the Employee's employment, and for a period of twenty-four (24) months after the termination of the Employee's employment, whether voluntary or involuntary, the Employee will not accept employment with, be engaged as an independent contractor or consultant by, become associated or affiliated with, become a partner or member of, or own, operate, control or manage, any business: (1) that is within fifty (50) miles of your place of AAFE employment; and (2) that offers facial injectables, offers med spa services or competes, in any way, with the AAFE. AAFE agrees that an involuntary termination will not trigger Paragraph 8 unless the termination is with Cause. If the Employee completes his or her Training Commitment, the AAFE and the Employee agree that the twenty-four (24) month period in this Paragraph shall be reduced to six (6) months within fifty (50) miles in regards to entities offering facial injectables. Employee acknowledges signing a separate AAFE faculty agreement which contains clauses related to Other Workshops and non-competition in regards to facial injectable training.

9. <u>Reasonable Scope</u>. The Employee acknowledges and agrees that the scope of Paragraphs 7 and 8 are necessary and reasonable in order to protect the Company in the conduct of its business and that, if the Employee becomes employed by another employer or engaged as an independent contractor, the Employee will be required to disclose the existence of this Agreement to such employer or entity.

10. <u>Confidentiality</u>. The Employee agrees that both during the Employee's employment and thereafter, the Employee will not use for himself or herself or disclose to any person not employed by the Company any Confidential Information of the Company acquired by the Employee during the Employee's employment with the Company, except where such disclosure is consented to, or approved by, the Company.

11. <u>Return of Company Property</u>. During and after the Employee's employment with the Company, the Employee will not remove from the Company's premises any documents, records, files, notebooks, reports, video or audio recordings, patient records, computer printouts, e-mails, programs, software or code, price lists, drawings, customer lists, or other similar documents containing Confidential Information, including copies thereof, whether prepared by Employee or others, except as Employee's duty shall require, and in such cases, will promptly return such items to the Company. Upon termination of the Employee's employment with the Company, all such items including summaries or copies, then in the Employee's possession or control, will be returned to the Company immediately.

12. <u>Social Media</u>. The Company will create and own social media accounts that the Employee will utilize during his or her employment with the Company. The Employee agrees and acknowledges that the social media accounts created and owned by the Company will continue to be owned by the Company upon the Employee's termination of employment, for any reason. The Employee shall cooperate with the Company to provide passwords and to transfer the social media accounts to another Company employee upon the Employee's termination from employment. The Employee shall not solicit, directly or indirectly, any of the followers on the social media accounts created and owned by the Company upon the Employee's termination from employment with the Company.

13. <u>Tolling of Specified Time Periods</u>. In the event Employee violates the provisions of Paragraphs 7 and 8, as to which there is a specific time period during which Employee is prohibited from certain actions and activities, such violation shall toll the running of such time period from the date of such violation until the date the violation ceases.

14. <u>Remedy for Breach</u>. The Employee hereby acknowledges that in the event of any breach or threatened breach of this Agreement, the Company will have no adequate remedy at law and could suffer substantial and irreparable damage. Accordingly, the Employee hereby agrees that, in such event, the Company will be entitled, notwithstanding any election by the Company, to claim damages, to obtain an injunction, to restrain any such breach, or threatened breach, or to obtain specific performance of this agreement, all without prejudice to any and all other remedies which the Company may have at law or in equity. This Agreement shall be construed as independent from any other aspect of Employee's employment with the Company, and any claim that Employee may have or might assert against the Company, whether arising out

4

of Employee's employment relationship with the Company or otherwise, shall not constitute a defense to the enforcement of this Agreement.

15. **Attorneys' Fees**. In the event legal proceedings are brought by the Company to enforce any or all its rights under this Agreement, and the Company prevails in any such legal proceedings, the Company will be entitled to recover from Employee its reasonable attorneys' fees, costs and other expenses, to the extent permitted by law.

16. **Severability**. If any provision of this Agreement is held by a court to be void or unenforceable for any reason, in whole or in part, the remaining sections and provisions of this Agreement, or their remaining portions, will nevertheless continue with full force and effect, and Employee agrees that a court of competent jurisdiction will have jurisdiction to reform such section or provision to the extent necessary to cause it to be enforceable to the maximum extent permitted by law, and Employee agrees to be bound by such reformation.

17. **Nonwaiver**. The failure of the Company to enforce any provision of this Agreement will not be construed as a waiver of such provision, nor prevent the Company thereafter from enforcing such provision or any other provision of this Agreement.

18. **Successors and Assigns**. This Agreement will be binding on and will inure to the benefit of the Parties, their legal representatives, successors, and assigns.

19. **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and such counterparts shall, when taken together, constitute and be one and the same instrument.

20. **Governing Law**. This Agreement shall be governed by the laws of the State of Ohio. Any disputes relating to this Agreement will be adjudicated in the state or federal courts located in Cuyahoga County, Ohio.

IN WITNESS WHEREOF, the Employee has executed this Agreement as of March 6, 2019.

AMERICAN ACADEMY OF FACIAL ESTHETICS LLC

By: _____

Its: _____

EMPLOYEE

Printed Name: __Jillian Charles__

Signed Name: __JCharles__

5



**ANEW MEDSPA 2120 LLC**
**AKA AAFE Training Center**
**2120 South Green Road – Suite103– South Euclid, OH**
**44121**

3/8/19

Jillian Charles

Dear Jillian Charles,

ANEW MEDSPA 2120, LLC, an Ohio limited liability company (hereinafter referred to as the "Company"), is pleased to offer you employment with the Company. We're very excited about working together and we look forward to you joining us.

You will report to the Company's executive management. We anticipate that your duties will include those commensurate with your position as shall be specified or designated by the officers of the Company from time to time.

You should be aware that your employment with the Company is for no specified period and constitutes "at will" employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without written notice.

You should also be aware that Company employees are not permitted to make any unauthorized use of documents or other information in their employment with the Company that could properly be considered or construed to be confidential or proprietary information of another individual or company. Likewise, a Company employee may not bring with him or her onto the premises of the Company any confidential documents or other form of tangible information that relate to his or her prior employer's business and that are not owned by such employee or otherwise acquired by the Company.

You acknowledge that all property provided to you by the Company in connection with your employment shall be and remain solely the Company's property. You agree that, upon the termination of your employment with the Company, you shall promptly turn over to the Company all property and records (including all copies and summaries thereof) of the Company in your possession.

This offer of employment and your employment by the Company is subject to your signing the Company's Employee Confidential Information Agreement, a copy of which is enclosed.

You hereby acknowledge that (1) you have not relied upon any representations other than those set forth in this offer letter, and (2) this offer letter supersedes all prior and contemporaneous verbal

Page 2

or written agreements, understandings or communications between you and the Company concerning your employment. Any subsequent agreement or representation shall not be binding on the Company unless contained in a written instrument signed by you and the President of the Company.

If you choose to accept the Company's offer under the terms described above, please sign and date this letter in the space provided below and return it to me, along with the executed Employee Confidential Information Agreement, no later than 3/15/2018. If we have not received your signed acceptance by such date, this offer shall be revoked and considered null and void. If you have any questions about this letter or its enclosures, please contact me.

The Company is part of an organization that has built an outstanding reputation for exciting, innovative and quality programs and services. Credit for this goes to every one of our employees. We look forward to your becoming part of our team.

Sincerely,

ANEW MEDSPA 2120, LLC
AKA AAFE Training Center

By: _____
     Louis Malcmacher /CEO

Enclosure:   Employee Confidential Information Agreement

Acknowledged and accepted (please sign and date below and retain a copy for your records):

_Jillian Charles_     _JCharles_     Date: 3/13/19
NAME



**AMERICAN ACADEMY OF FACIAL ESTHETICS**

**AMERICAN ACADEMY OF FACIAL ESTHETICS LLC**
2120 S. Green Rd.
South Euclid, OH 44121
800 952-0521

Re: *AAFE Workshops*

Dear Jillian Charles:

This letter agreement sets forth the provisions of our arrangement pursuant to which you will participate as a trainer at certain workshops of the American Academy of Facial Esthetics LLC ("AAFE"), an Ohio limited liability company.

1. **Services**.

(a) You are being engaged by AAFE under this letter agreement to be a trainer/instructor at AAFE workshops (each, a "Workshop").

(b) You agree that AAFE may tape (audio and/or video), digitally record, or record on any other appropriate medium each of your training and instruction sessions, and you hereby grant AAFE a non-exclusive, perpetual, worldwide, royalty-free license to incorporate your training and instruction presentations in its recorded study courses (including, without limitation, home study courses conducted and/or available over the Internet) and to replay each recorded presentation during AAFE's live workshops and other live educational events; *provided*, that AAFE shall provide appropriate attribution of authorship to you for each presentation of yours incorporated in a recorded study course or replayed during any live workshop or other live educational event.

(c) You agree and acknowledge that any and all training manuals and other training materials provided by AAFE for your use at each Workshop belong exclusively to AAFE, shall bear AAFE's copyright notice, and shall be deemed to be confidential information of AAFE subject to Section 9 of this letter agreement. You agree that you will not change or add any information to any and all training materials and will not distribute any additional material without prior approval by AAFE. You acknowledge that you shall not have or acquire by virtue of this letter agreement any right, title, interest, or license in, to, or under any intellectual property rights (including, without limitation, patents, trademarks, and copyrights) that are owned, held, or licensed by AAFE or any of its affiliates.


Initials

1

1525211v2/16366-2

(d) In participating in each Workshop, you will act at all times only as an independent contractor. You agree that you are not an employee, agent, partner, or joint venturer of AAFE or any of its affiliates. You shall not hold yourself out to the public as an employee, agent, partner, or joint venturer of AAFE or any of its affiliates. AAFE will not withhold or pay payroll taxes of any jurisdiction with respect to the compensation payable to you hereunder. You acknowledge that you are not entitled to participate in any benefit plan (including, without limitation, any retirement plan, health insurance plan, or life insurance plan) that AAFE may now or in the future provide to its employees.

2. **Location**. Each Workshop will be held at a location to be determined solely by AAFE.

3. **Compensation**. You are a full time employee of the AAFE and compensation is covered in another agreement.

4. **Expenses**. AAFE agrees to provide you with, or reimburse you for the cost of, 21-day advance purchase economy class air and ground transportation to and from your residence to your home airport and from the destination airport to and from the Workshop. AAFE will also provide you with accommodations for 2 nights at a hotel at or near the location of the Workshop, unless the event takes place within one hour of your residence. If you drive to the event with your personal car, AAFE will pay you 57.5 cents per mile to and from the event, which will include gasoline. Meal expenses will be reimbursed up to a maximum of $60 per Workshop day. Trainers are expected to make reasonable selections when ordering meals. Reimbursement claims for food and any other covered expenses require receipts. Notwithstanding the foregoing, meal expenses incurred in the city or town in which the residence or primary work location of the trainer is located are not reimbursable. No reimbursement will be made for alcoholic beverages. Meal expenses will be reimbursed only if submitted on the expense sheet with an accompanying receipt. This meal expense policy will be reviewed periodically and may be changed at the discretion of AAFE. You agree to use the expense report sheet provided by AAFE in accounting for your expenses. Airline expenses need to be pre-approved by AAFE before you purchase the airline ticket. The expense report should be submitted to AAFE to the attention of David Malcmacher at david@FacialEsthetics.org or such other person as may be designated by AAFE from time to time.

5. **Publicity**. You agree to provide AAFE with a curriculum vitae and such other information about you as may be appropriate. AAFE will use this information to publicize the Workshops at its discretion.

6. **Other Workshops, Etc.** You agree that, for so long as you are engaged as an administrator, trainer or instructor by AAFE during the period commencing three (3) months prior, and ending sixty (60) months after, the date of a Workshop, you shall not, without the prior written consent of AAFE (which may be granted or withheld in its sole and absolute discretion) participate, directly or indirectly, as an administrator, trainer, instructor, speaker, partner/owner of a company, or presenter at any non-AAFE

JC
Initials

2

workshop, seminar, meeting, private individual course, private in-office training, or any other in-office, educational or professional event held within the United States or Canada at which training, instruction, presentations, or other professional guidance or education is provided on any one or more of the following topics including but not limited to: medical and dental facial aesthetics, sclerotherapy and mesotherapy, Botox and botulinum toxin treatments, dermal fillers, PDO Threads, Platelet Rich Plasma, Platelet Rich Fibrin, Kybella, Sculptra, skin peel treatments, laser and IPL skin treatments, medical and dental facial pain therapeutics including but not limited to headaches and migraines, medical and dental TMJ syndrome, orofacial pain, myofascial pain therapy diagnosis and treatment, laser therapeutic treatments, dental sleep medicine, oral appliance therapy, bruxism therapy, dental occlusion, and/or medical billing. In the event of a breach or violation by you of this provision of this letter agreement, the non-compete period shall be tolled until such breach or violation has been duly cured.

7. **Non-solicitation.** You agree that, for so long as you are engaged as an administrator, trainer or instructor by AAFE and for two years after your last Workshop for AAFE, you shall not, directly or indirectly, on your own or anyone else's behalf, solicit, attempt to solicit, persuade, entice, induce, or encourage (i) any current of former AAFE attendee, member, mentor, or faculty to terminate or modify their relationship with AAFE, (ii) any individual to terminate or modify such individual's employment or consulting relationship with AAFE, including, if applicable, such individual's status as a trainer or instructor for AAFE, or (iii) any individual who you know or, with the exercise of reasonable diligence, should know attended or participated in any AAFE educational event, including, without limitation, a Workshop, to attend or otherwise participate in any Competitive Educational Event. You further agree that, in the event any AAFE attendee, member, or participant contacts you for any additional instruction or a private course, you will refer such individual to AAFE and you will not provide private instruction to AAFE attendees or participant unless AAFE sponsors and sets up the course or other private instruction under AAFE's name. In the event of a breach or violation by you of this provision of this letter agreement, the non-solicitation period shall be tolled until such breach or violation has been duly cured.

8. **Cancellation.** You hereby acknowledge and agree that AAFE, in its sole and absolute discretion, may cancel any scheduled Workshop or your participation in any scheduled Workshop at any time prior to the scheduled commencement date of such Workshop. AAFE will reimburse you for any travel related non-refundable cancellation fees should AAFE cancel a Workshop only if the travel related reservations were pre-approved by AAFE.

9. **Confidential Information.**

*JC*
Initials

3

(a)  You acknowledge that, as a result of your being engaged hereunder to participate in, and to perform services in connection with, one or more Workshops, you shall or may be making use of, acquiring, or adding to confidential information (whether or not marked as such) of a special and unique nature and value relating to such matters as AAFE's "know-how," inventions, discoveries, improvements, formulas, trade secrets, experimental and other techniques, work-in-progress, clinical, educational, and business development plans, clinical trial protocols, systems, programs, procedures, manuals, confidential reports and communications, marketing information, and financial data. You further acknowledge that any information and materials received from third parties in confidence (or subject to nondisclosure or similar covenants) shall be deemed to be, and shall be, confidential information within the meaning of this Section 9. As a material inducement to AAFE to enter into this letter agreement and to engage you as a trainer/instructor for each Workshop, you covenant and agree that you shall not, except with the prior written consent of AAFE, or except if you are acting solely for the benefit of AAFE in connection with AAFE's business and affairs, at any time prior to, during, or following the Workshop, directly or indirectly disclose, divulge, reveal, publish, transfer, or use, for any purpose whatsoever, any confidential information that is obtained by, or disclosed to, you as a result of your performing services for AAFE under this letter agreement.

(b)  Upon the conclusion of each Workshop, you shall promptly turn over to AAFE all originals and copies that you may have in your possession or control of any and all confidential information of AAFE described in Section 9(a).

10. **Equitable Remedies**. You acknowledge that the covenants, restrictions, and agreements contained in Sections 6, 7, and 9 hereof are necessary for the protection of the business and goodwill of AAFE and are reasonable for such purpose. You agree that any breach of any of said Sections is likely to cause AAFE substantial and irrevocable damage that is difficult to measure. Therefore, in the event of any such breach or threatened breach, you agree that AAFE, in addition to other remedies that may be available, will have the right to obtain an injunction from a court restraining such breach or threatened breach and the right to specific performance of the provisions of said Sections. In that connection, you hereby waive, as a defense to AAFE's obtaining either an injunction against your breach or threatened breach of the provisions of any one or more of Sections 6, 7, and 9 hereof or an order compelling your performance of the provisions of said Sections, that AAFE may obtain monetary damages against you in a court of law that will adequately compensate AAFE for your breach of any one or more of said Sections.

11. **AAFE Membership Website**. All AAFE faculty members are expected to participate in the membership forums on a regular basis.

12. **Use of the AAFE Name and Logo**.


Initials

(a) All AAFE faculty members in good standing will be allowed to announce and advertise their membership in AAFE subject to, and as governed by, the following guidelines: A "faculty member in good standing" is defined as a faculty member who, by signing and returning to AAFE this agreement, has confirmed such faculty member's commitment to abide by (i) the terms and conditions of this agreement, (ii) AAFE policies and procedures, as published by AAFE from time to time (and as the same may be revised, at any time and from time to time, by AAFE in its discretion), and (iii) AAFE's Guidelines for Advertising Membership. Should this agreement terminate for any reason, should you cease to be a faculty member in good standing for any reason, or should you be notified by AAFE that you are no longer affiliated with AAFE, you shall, immediately upon the occurrence of such event, cease to have the right to use the AAFE name and logos in any manner or for any purpose and you must cease all uses of the AAFE name and logos immediately.

(b) Logos are available from the AAFE Office. The logos provided for use by faculty members may not be altered in any way. The AAFE name and logos may be used only by faculty members in good standing and only exactly as is with no alterations. All faculty members in good standing are welcome to use the AAFE name and logos subject, however, to strict compliance with the following guidelines:

  (i) Logos stating "Fellow," "Master," "General Member," "Associate Member," and "Accredited Member" are for use only by faculty members who fall into one or more of those categories.

  (ii) While use of the AAFE name and logos are permitted in conjunction with publicizing your status an AAFE faculty member, the advertisement, announcement, or other publication should not imply that AAFE is any way or to any extent endorsing, sponsoring, recommending, or responsible for your professional practice or the services that you offer to patients.

  (iii) AAFE's name should not be set in a type size larger than that used for your or your practice's own name or names.

  (iv) Misrepresentations and misleading statements are not permitted. If a faculty member's representations or statements are determined by AAFE to be false or misleading within thirty (30) days after AAFE becomes informed of the same, AAFE will inform the appropriate licensing body or bodies of the false or misleading statements. In addition, if AAFE becomes aware that an individual who is not a faculty member (whether or not such individual previously held such status) is misrepresenting himself or herself as a faculty member, AAFE will inform the appropriate licensing board(s) of such misrepresentation. The AAFE may, in its discretion, take legal or other action against any person infringing upon its trademarks or copyrights.

JC
Initials

(v) All questions regarding the appropriate use of the AAFE name and logos should be submitted to the AAFE Office for review.

13. **Faculty Training Sessions.** To maintain the high educational standards that all of our faculty members believe in, faculty members are required to participate in faculty training sessions that will include webinars and/or half day live sessions that will occur prior to AAFE events.

14. **Notice of Exception Pursuant to DTSA.** Notwithstanding any other provision in this agreement, and in accordance with the federal Defend Trade Secrets Act, you shall not be held criminally or civilly liable under any federal or state trade secret law for disclosure of a trade secret that (i) is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and made solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order. Nothing in this agreement is intended to conflict with 18 U.S.C. §1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. §1833(b). For purposes of this Section 14, "trade secret" shall be defined as set forth in 18 U.S.C. §1839(3).

15. **Miscellaneous.**

(a) This letter agreement represents the entire agreement between you and AAFE relating to the subject matter hereof and may be changed only in a writing signed by both you and AAFE.

(b) Neither you nor AAFE may assign this letter agreement or any right or obligation hereunder without the prior written consent of the other party. Any such attempted assignment without such consent shall be void.

(c) No failure of either you or AAFE to enforce any right hereunder in any instance shall be deemed a waiver thereof in the same or any other instance.

(d) This letter agreement shall be governed by the laws of the State of Ohio without giving effect to the choice or conflicts of laws provisions thereof. Any disputes relating to this agreement will be adjudicated in the state or federal courts located in Cuyahoga County, Ohio. Both parties expressly consent to the exclusive jurisdiction of said courts for any such dispute and hereby expressly agree not to object to such jurisdiction for any reason or to seek any dismissal or transfer of any action relating to this letter agreement brought in such courts.


Initials

(e) You hereby agree to indemnify AAFE for all costs and expenses, including reasonable attorney's fees, incurred by AAFE in enforcing this letter agreement.

(f) If any provision of this letter agreement shall be held invalid or unenforceable by a court of competent jurisdiction, such provision shall be deemed omitted to the extent required by such court and the remainder of this letter agreement shall continue in full force and effect.

(g) You agree to adhere to the Policy regarding commercial support/conflict of interest that is attached to this agreement and you agree to fill out the Conflict of Interest Declaration attached thereto.

If the foregoing meets with your approval, please sign the enclosed copy of this letter on the line below indicated for your acceptance and return the copy so signed (along with your completed and signed Conflict of Interest Declaration) to the undersigned, thereby constituting this letter a contract between you and AAFE on the foregoing terms.

Very truly yours,

American Academy of Facial Esthetics LLC

By: _____
David Malcmacher, CEO

I, __Jillian Charles__, hereby agree to the terms and provisions of the foregoing letter.

_____JCharles_____  _____3/13/19_____
Signature  Date

Please fax **all** 9 pages back to (216) 393-0023.

__JC__
Initials

7

## AMERICAN ACADEMY OF FACIAL ESTHETICS, LLC
## CONFLICT OF INTEREST DECLARATION

A conflict of interest may be considered to exist if a continuing dental education speaker is affiliated with, or has a financial interest in, any organization that may be supporting a course or may have a direct interest in the subject matter of the presentation.

The intent of this policy is not to prevent a speaker with an affiliation or financial interest from making a presentation. Rather, the intent of this policy is that any potential conflict be identified openly so that the attendees have full disclosure of the facts and may form their own judgments about the presentation.

### DECLARATION

I, the undersigned, declare that neither I nor any member of my family has a financial arrangement or affiliation with any corporate organization offering financial support or grant monies for this continuing dental education program, and neither I nor any member of my family has a financial interest in any commercial product(s) or service(s) that I will discuss in my presentation.

_A Charles_ _3/13/19_
Signature                                                   Date

Please check whichever is applicable (if either applies):

☐ I, the undersigned (or an immediate family member of mine), have a financial interest or arrangement or affiliation with the corporate organization offering financial support or grant monies for this continuing dental education program.

☐ I (or an immediate family member of mine) have a financial interest in one or more commercial products or services that I will discuss during my presentation.

Affiliation/Financial Interest Corporate Organization/Grants/Research Support

Consultant _____
Stock Shareholder (directly purchased) _____
Honorarium _____
Other Financial or Material Support _____

_____          _____
Signature                                                   Date

Having an interest in or an affiliation with a corporate organization does not necessarily prevent you from making a presentation, but the relationship must be made known to the audience. Failure to disclose or a false disclosure will require American Academy of Facial Esthetics, LLC(AAFE) to remove you from the program and to engagement a replacement for your presentation.

_JC_
Initials

8

## AMERICAN ACADEMY OF FACIAL ESTHETICS LLC

### POLICY REGARDING
### COMMERCIAL SUPPORT/CONFLICT OF INTEREST

The following is the policy of American Academy of Facial Esthetics, LLC (AAFE):

1. Instructors should avoid recommending or mentioning any specific product by its trade name, using generic terms whenever possible. When reference is made to a specific product by its trade name, you should also mention the competitive products as well.

2. Program topic selection shall be based upon a need for professional education/training and not for the purpose of endorsing commercial drugs, products, or services.

3. Monies received from commercial sources in support of American Academy of Facial Esthetics, LLC educational programs shall be unrestricted in that American Academy of Facial Esthetics, LLC shall retain exclusive rights regarding the selection of faculty, instructional materials, program content, etc.

4. Any or all commercial support received shall be recognized in writing in the program announcements, brochures, etc., but shall not be presented or interpreted as an endorsement by American Academy of Facial Esthetics, LLC of the products of that commercial supporter.

5. Commercial support shall be limited to:

    a. The payment of reasonable honoraria;
    b. Reimbursement of out-of-pocket expenses;
    c. The cost of meals or social events held as part of an educational activity; and
    d. Documentation of fund payments for specific programs shall be maintained both by American Academy of Facial Esthetics, LLC and any commercial sources of said funds; each shall submit a report to the other regarding any expenses.

Further, the parties agree that the speaker/instructor is providing services under this agreement as an independent contractor. In addition, such services are unique and personal to the speaker/instructor and he/she may not substitute any other person to provide such services without the advance written consent of American Academy of Facial Esthetics, LLC.

Each speaker/instructor is required to disclose to participants any monetary or other special interests that he/she may have with any company or product that is discussed during his/her presentation. Each speaker/instructor must agree to and sign the attached "Conflict of Interest Declaration."


Initials

9