# NON-COMPETITION, NON-DISCLOSURE, NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

This Non-Competition, Non-Disclosure, Non-Solicitation and Confidentiality Agreement (the "Agreement") is made and entered into as of this 6th day of March, 2019, by and between **[name of employee]** (the "Employee"), American Academy of Facial Esthetics LLC (the "Company" or "AAFE"), and each of the Company's successors, related companies, assigns, and subsidiaries (the Employee and the Company are collectively, the "Parties").

WHEREAS, the Company is a multidisciplinary professional healthcare organization whose mission is teaching the best non-surgical and non-invasive facial injectable techniques to healthcare professionals worldwide. The AAFE is an umbrella organization comprised of physicians, dentists, nurses and other healthcare professionals committed to providing the best possible outcomes in areas of facial esthetics and facial pain treatment;

WHEREAS, the Employee will be given valuable training over many months by the AAFE which will enable the Employee to be qualified to perform services on behalf of the AAFE (the "Training");

WHEREAS, if the Employee was required to pay for the Training, the total cost of the Training would exceed Twenty-Five Thousand Dollars;

WHEREAS, in addition to the valuable Training, the Employee will have access to and become acquainted with customer lists, customer buying histories, habits, preferences, pricing information, marketing information, product/service development strategies, the identity of and other confidential and proprietary information related to vendors, sales methods and procedures, and services utilized and developed by the Company, the business plan of the Company, the business strategy of the Company, and other confidential and proprietary information of the Company (the "Confidential Information"); and

WHEREAS, the execution of this Agreement is a condition of the Employee's employment with the Company and the initiation of the Training;

NOW, THEREFORE, in consideration of the Employee's employment by the Company and the access that is granted to the Employee by the Company to the Company's proprietary, valuable, and confidential information, the Employee hereby covenants and agrees as follows:

1. <u>Representations of the Employee</u>. The Employee represents and warrants that the Employee's employment with the Company does not violate the provision of any covenant not to compete or other restrictive agreement. The Employee further represents that the Employee is not subject to any employment, confidentiality, or other agreement that would prevent the Employee from fully satisfying the Employee's duties under this Agreement or that would be violated if the Employee completes his or her duties under this Agreement. The Employee finally represents and warrants that the Employee will not disclose or use proprietary information belonging to a former employer or other entity without its written permission.

2.  **Consideration**. The Employee acknowledges and agrees that solely by virtue of the Employee's employment with the Company, the Employee will acquire Confidential Information, and that, but for such employment, the Employee would not have had access to the Confidential Information. The Employee further acknowledges and agrees that the execution of this Agreement is a condition of his or her employment with the Company. Finally, the Employee acknowledges and agrees that the execution of this Agreement is a condition precedent to the Training.

3.  **Best Efforts/Duty of Loyalty**. Unless the Employee has the written consent of the Company, the Employee shall devote all of his or her business skills, business time, and business attention solely and exclusively to the Company and in furtherance of the business and interests of the Company. The Employee further agrees to notify the Company if the Employee becomes aware that other Company employees are failing to devote their best efforts to the Company.

4.  **Training Commitment**. The Employee agrees and acknowledges that the Training is valuable and that the AAFE is providing the Employee the Training, free of charge, in return for the Employee's commitment to remain employed by the AAFE for two years from the date this Agreement is executed (the "Training Commitment"). Employee understands and agrees that he/she must reimburse the AAFE the cost of the Training if the Employee's employment ends prior to the conclusion of the Training Commitment for any of the following reasons:

    (i) Employee attends, but fails to adequately complete the Training;

    (ii) Employee is terminated for Cause by the AAFE prior to completing the Training Commitment; or

    (iii) Employee resigns from his/her employment with the AAFE, for any reason, prior to completing the Training Commitment.

For purposes of Paragraph 4, "Cause" includes, but is not limited to, dishonesty, fraud, embezzlement, gross negligence, a failure or inability to perform assigned duties or meet established performance goals, violation of the AAFE's policy against discrimination or harassment, or other willful misconduct.

5.  **Reimbursement Amount**. Employee shall reimburse the AAFE for the cost of the Training within thirty (30) days of the termination of his/her employment with the AAFE for any of the reasons set forth in Paragraph 4. The Employee's reimbursement amount shall be as follows:

    (i) Twenty Thousand Dollars ($20,000) if the Employee's employment with the AAFE ends pursuant to Paragraph 4 before the completion of six (6) months of employment;

    (ii) Fifteen Thousand Dollars ($15,000) if the Employee's employment with

        the AAFE extends beyond six months, but ends pursuant to Paragraph 4 before the completion of (12 months of employment;

(iii)    Ten Thousand Dollars ($10,000) if the Employee's employment with the AAFE extends beyond twelve (12) months, but ends pursuant to Paragraph 4 before the completion of eighteen (18) months of employment; and

(iv)    Five Thousand Dollars ($5,000) if the Employee's employment with the AAFE extends beyond eighteen (18) months, but ends pursuant to Paragraph 4 before the completion of twenty-four (24) months of employment.

6.    <u>At-Will Employment</u>. Notwithstanding anything to the contrary contained herein, Employee agrees and acknowledges that he/she is an "at-will" employee of the AAFE and that his/her employment may be terminated at any time and for any reason by the Employee or by the AAFE. This Agreement does not alter, effect, or impact this at-will employment relationship and Employee agrees, understands, and acknowledges that his/her employment with the AAFE is for no specified period of time.

7.    <u>Non-Solicitation of Employees</u>. The Employee agrees that, during the Employee's employment, and for a period of six (6) months after the termination of the Employee's employment, whether voluntary or involuntary and whether with or without Cause, the Employee will not, directly or indirectly, except on behalf of the Company, solicit or accept if offered to the Employee, with or without solicitation, on the Employee's own behalf or on behalf of any other person or entity, the services of any person who is a current employee of the Company (or was an employee of the Company during the six (6) months preceding such solicitation), nor solicit any of the Company's current employees (or any individual who was an employee of the Company during the six (6) months preceding such solicitation) or consultants, to terminate employment or an engagement with the Company, nor agree to hire any current employee (or any individual who was an employee of the Company during the year preceding such hire) of the Company into employment with the Employee or any other person or entity.

8.    <u>Non-Compete</u>. The Employee agrees that, during the Employee's employment, and for a period of twenty-four (24) months after the termination of the Employee's employment, whether voluntary or involuntary, the Employee will not accept employment with, be engaged as an independent contractor or consultant by, become associated or affiliated with, become a partner or member of, or own, operate, control or manage, any business: (1) that is within fifty (50) miles of your place of AAFE employment; and (2) that offers facial injectables, offers med spa services or competes, in any way, with the AAFE. AAFE agrees that an involuntary termination will not trigger Paragraph 8 unless the termination is with Cause. If the Employee completes his or her Training Commitment, the AAFE and the Employee agree that the twenty-four (24) month period in this Paragraph shall be reduced to six (6) months within fifty (50) miles in regards to entities offering facial injectables. Employee acknowledges signing a separate AAFE faculty agreement which contains clauses related to Other Workshops and non-competition in regards to facial injectable training.

9. <u>Reasonable Scope</u>. The Employee acknowledges and agrees that the scope of Paragraphs 7 and 8 are necessary and reasonable in order to protect the Company in the conduct of its business and that, if the Employee becomes employed by another employer or engaged as an independent contractor, the Employee will be required to disclose the existence of this Agreement to such employer or entity.

10. <u>Confidentiality</u>. The Employee agrees that both during the Employee's employment and thereafter, the Employee will not use for himself or herself or disclose to any person not employed by the Company any Confidential Information of the Company acquired by the Employee during the Employee's employment with the Company, except where such disclosure is consented to, or approved by, the Company.

11. <u>Return of Company Property</u>. During and after the Employee's employment with the Company, the Employee will not remove from the Company's premises any documents, records, files, notebooks, reports, video or audio recordings, patient records, computer printouts, e-mails, programs, software or code, price lists, drawings, customer lists, or other similar documents containing Confidential Information, including copies thereof, whether prepared by Employee or others, except as Employee's duty shall require, and in such cases, will promptly return such items to the Company. Upon termination of the Employee's employment with the Company, all such items including summaries or copies, then in the Employee's possession or control, will be returned to the Company immediately.

12. <u>Social Media</u>. The Company will create and own social media accounts that the Employee will utilize during his or her employment with the Company. The Employee agrees and acknowledges that the social media accounts created and owned by the Company will continue to be owned by the Company upon the Employee's termination of employment, for any reason. The Employee shall cooperate with the Company to provide passwords and to transfer the social media accounts to another Company employee upon the Employee's termination from employment. The Employee shall not solicit, directly or indirectly, any of the followers on the social media accounts created and owned by the Company upon the Employee's termination from employment with the Company.

13. <u>Tolling of Specified Time Periods</u>. In the event Employee violates the provisions of Paragraphs 7 and 8, as to which there is a specific time period during which Employee is prohibited from certain actions and activities, such violation shall toll the running of such time period from the date of such violation until the date the violation ceases.

14. <u>Remedy for Breach</u>. The Employee hereby acknowledges that in the event of any breach or threatened breach of this Agreement, the Company will have no adequate remedy at law and could suffer substantial and irreparable damage. Accordingly, the Employee hereby agrees that, in such event, the Company will be entitled, notwithstanding any election by the Company, to claim damages, to obtain an injunction, to restrain any such breach, or threatened breach, or to obtain specific performance of this agreement, all without prejudice to any and all other remedies which the Company may have at law or in equity. This Agreement shall be construed as independent from any other aspect of Employee's employment with the Company, and any claim that Employee may have or might assert against the Company, whether arising out

of Employee's employment relationship with the Company or otherwise, shall not constitute a defense to the enforcement of this Agreement.

15. <u>Attorneys' Fees</u>. In the event legal proceedings are brought by the Company to enforce any or all its rights under this Agreement, and the Company prevails in any such legal proceedings, the Company will be entitled to recover from Employee its reasonable attorneys' fees, costs and other expenses, to the extent permitted by law.

16. <u>Severability</u>. If any provision of this Agreement is held by a court to be void or unenforceable for any reason, in whole or in part, the remaining sections and provisions of this Agreement, or their remaining portions, will nevertheless continue with full force and effect, and Employee agrees that a court of competent jurisdiction will have jurisdiction to reform such section or provision to the extent necessary to cause it to be enforceable to the maximum extent permitted by law, and Employee agrees to be bound by such reformation.

17. <u>Nonwaiver</u>. The failure of the Company to enforce any provision of this Agreement will not be construed as a waiver of such provision, nor prevent the Company thereafter from enforcing such provision or any other provision of this Agreement.

18. <u>Successors and Assigns</u>. This Agreement will be binding on and will inure to the benefit of the Parties, their legal representatives, successors, and assigns.

19. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and such counterparts shall, when taken together, constitute and be one and the same instrument.

20. <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Ohio. Any disputes relating to this Agreement will be adjudicated in the state or federal courts located in Cuyahoga County, Ohio.

IN WITNESS WHEREOF, the Employee has executed this Agreement as of March 6, 2019.

AMERICAN ACADEMY OF FACIAL ESTHETICS LLC

By: _____

Its: _____

EMPLOYEE

Printed Name: _Jillian Charles_____

Signed Name: _JCharles_____

5