IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JILLIAN CHARLES,** | Case No. 1:23-cv-01947-PAB |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **AMERICAN ACADEMY OF FACIAL ESTHETICS, LLC,** *et al.*, | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon Defendant/Counter-Plaintiff/Third-Party Plaintiff American Academy of Facial Esthetics, LLC's ("AAFE") Motion to Seal Doc. No. #29-1 and #30-1 and Motion to Sanction Plaintiffs and Plaintiffs' Counsel for Violation of this Court's Stipulated Protective Order filed on March 11, 2024 ("Motion for Sanctions"). (Doc. No. 31.) On March 25, 2024, then Counsel for Plaintiff/Counter-Defendant Jillian Charles ("Charles") and Third-Party Defendant RPMEDSQUAD, LLC d/b/a Vio ("Vio") ("Former Counsel") and on behalf of Charles, Vio, and themselves, filed a Response in Opposition to AAFE's Motion for Sanctions. (Doc. No. 39.) On April 1, 2024, AAFE filed a Reply. (Doc. No. 44.) On June 28, 2024, a hearing was conducted on AAFE's Motion for Sanctions. (Doc. No. 68.) AAFE's Motion for Sanctions is now ripe for a decision.

For the following reasons, the Court **DENIES** AAFE's Motion for Sanctions. (Doc. No. 31.)

I.   **Background**

On January 16, 2024, the parties filed an Amended[1] Joint Motion to Approve Stipulated Protective Order, attached their proposed order, and requested that this Court approve and enter it. (Doc. No. 17.) Upon review of the parties' proposed order and upon finding it to be consistent with Appendix L of the Local Civil Rules and the Court's Standing Order, the Court approved and entered the Stipulated Protective Order ("Protective Order"). (Doc. No. 18.)

The Protective Order applies to "[a]ll documents produced in the course of discovery, including initial disclosures, all responses to discovery requests, all deposition testimony and exhibits, other materials which may be subject to restrictions on disclosure for good cause and information derived directly therefrom." (*Id.* at ¶ 1.) The Protective Order also sets forth a specific procedure for designating documents:

> A party may designate documents as confidential and restricted in disclosure under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document in a manner that will not interfere with the legibility of the document and that will permit complete removal of the CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER designation. Documents shall be designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER prior to or at the time of the production or disclosure of the documents.[2]
>
> . . .

---

[1] On January 11, 2024, the parties filed a Joint Motion to Approve Stipulated Protective Order ("Joint Motion"), attached their proposed order, and requested that this Court approve and enter it. (Doc. No. 16.) On January 12, 2024, the Court denied the parties' Joint Motion, finding that "the parties' proposed Stipulated Protective Order differs significantly from Appendix L [of the Local Civil Rules] in a number of material respects" and that the parties had failed to comply with the Court's Standing Order requiring them to set forth "the basis for any deviations from Appendix L." (Non-Document Order, Jan. 12, 2024.)

[2] The Protective Order also provides that, "[b]y written stipulation the parties may agree temporarily to designate original documents that are produced for inspection CONFIDENTIAL, even though the original documents being produced have not themselves been so labeled." (Doc. No. 18 at ¶ 2.) Neither Former Counsel nor AAFE contend that there was a written stipulation or agreement to designate original documents produced for inspection CONFIDENTIAL, even though the original documents produced had not been so labeled.

> Documents designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER under this Order, including protected health information, shall not be used or disclosed by the parties, counsel for the parties, or any other persons identified in ¶ 5(b) [designating categories of persons that may be allowed to review documents designed "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER"] for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including any appeal thereof.

(*Id.* at ¶¶ 2, 5(a).) The Protective Order also provides that "[d]eposition testimony shall be deemed CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER only if designated as such by a party in writing within fourteen days after delivery of the transcript." (*Id.* at ¶ 4.)

On February 12, 2024, the Court held a status conference to discuss issues concerning AAFE's financials and business structure raised in a Position Paper filed by Charles and Vio. (Doc. Nos. 20, 21.) At the status conference, the Court ordered AAFE's Counsel "to supply additional information distinguishing and breaking down the revenues generated by and between AAFE, Anew Medspa, and the Training Center [Anew Medspa 2120, LLC d/b/a AAFE Training Center] from September 1, 2022, until Charles' departure from AAFE in September 2023." (Doc. No. 22 at PageID# 384.) In response to the Court's order, on February 27, 2024, one of the attorneys for AAFE, sent an email to Former Counsel regarding AAFE's revenue from September 1, 2022, through September 2023, that set forth the AAFE Revenue, AAFE Cleveland Revenue, and the Anew Medspa 2020, LLC revenue (with the additional breakdown thereof included). The February 27, 2024 e-mail from AAFE's counsel to Former Counsel did not include a designation that the information contained therein was "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER." (Doc. No. 29-1 at PageID# 437–38.) The February 27, 2024 email from AAFE's Counsel to Former Counsel was attached as Doc. No. 29-1 to Charles's and Vio's Motion to Continue Preliminary Injunction Hearing (Doc. No. 29) and was

3

attached as Doc. No. 30-1 to Charles's Second Discovery Position Paper (Doc. No. 30), both of which were filed on March 8, 2024. (Doc. No. 30-1 at PageID# 451–52.)

On March 7, 2024, Attorney Chai sent an email to Former Counsel to which he attached two documents, a profit and loss statement for the Training Center and a tax return for Anew Medspa Management, LLC ("March 7 email"). (Doc. No. 77.) Unlike the February 27, 2024 email, Attorney Chai indicated in the March 7 email that "[t]he[] documents are confidential and subject to the protective order." (*Id.* at PageID# 902.) Further, the profit and loss statement and the tax return attached to the March 7 email were marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." (*See generally id.*)

On the morning of March 8, 2024, prior to the filing of Charles's Second Discovery Position Paper and Charles's and Vio's Motion to Continue to Preliminary Injunction Hearing, Attorney Chai sent an email to Former Counsel in which he restated and repeated the revenue figures from the February 27 email and again attached the profit and loss statement for the Training Center and tax return for Anew Medspa Management, LLC ("March 8 email"). (Doc. No. 71 at PageID# 835–36; June 28 Transcript I at Tr. 14–15.) Unlike the February 27, 2024 email and the March 8, 2024 email itself, the profit and loss statement and the tax return attached to the March 8, 2024 email were again marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." (Draft of June 28 Transcript I ("June 28 Transcript I") at Tr. 14–15.)[3]

On March 11, 2024, AAFE filed the instant Motion for Sanctions. (Doc. No. 31.) In its Motion for Sanctions, AAFE asserts that Charles, Vio, and Former Counsel violated the Protective

---

[3] Charles' current counsel requested a copy of the transcript of the June 28 hearing on AAFE's Motion for Sanctions. (Doc. No. 66.) However, Charles' current counsel has not yet followed through on payment for the transcript, so the transcript has not yet been finalized. Accordingly, the Court will cite to the draft of the transcript.

Order by filing on the public docket the February 27, 2024 email in Doc. Nos. 29-1 and 30-1, because it "contain[s] the AAFE's confidential financial information." (*Id.* at PageID# 458.) AAFE requests that the Court: seal Doc. Nos. 29-1 and 30-1; issue civil sanctions against Charles, Vio, and Former Counsel for violating the Stipulated Protective Order; and award AAFE attorney fees for responding to the filing of Doc. Nos. 29-1 and 30-1 and the filing of the Motion for Sanctions. (*Id.* at PageID# 457.)

On March 11, 2024, the Court set an in-person status conference for 4:00 P.M. that same day. (Non-Document Entry, Mar. 11, 2024.) At the status conference, the Court advised counsel for the parties that it had already made Doc. Nos. 29, 29-1, 30, and 30-1 "unavailable to the public until it resolves AAFE's Motion [] for Sanctions," and informed the parties that "it would hold a hearing to decide the sanctions issue." (Doc. No. 33 at PageID# 480.) The Court also indicated that it would not rule on AAFE's Motion for Sanctions until after Charles, Vio and Former Counsel had had an opportunity to respond to it. (*Id.*) On March 25, 2024, Charles and Vio filed a Response in Opposition to AAFE's Motion for Sanctions, to which AAFE filed a Reply on April 1, 2024. (Doc. Nos. 39, 44.)

The Court held a hearing on AAFE's Motion for Sanctions on June 28, 2024. (Doc. No. 68.) At the hearing, Former Counsel represented that Former Counsel Briach would be solely responsible for any sanctions sought by AAFE and imposed by the Court.[4] (*Id.*; June 28 Transcript I at Tr. 8.)

---

[4] At the hearing, AAFE's Counsel indicated that Charles and Vio themselves may be held responsible for their attorney's sanctionable conduct, citing the case of *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962), and Former Counsel requested an opportunity to review *Link* and file briefing on its application. (Doc. No. 68; June 28 Transcript I at Tr. 7–8.) Since the Court finds that Former Counsel did not violate the Protective Order, the Court need not address *Link* or AAFE's arguments associated therewith.

5

AAFE called Attorney Briach and Attorney Chai to testify. (Doc. No. 68; June 28 Transcript I at Tr. 9, 48.)

On July 3, 2024, AAFE filed a Motion for Leave to File the March 8 Email under seal ("First Motion for Leave"), which the Court granted. (Doc. Nos. 69, 70.) On July 3, 2024, AAFE filed the March 8 email under seal, without filing the confidential attachments to the March 8 email. (Doc. No. 71.) On July 5, 2024, Former Counsel filed a Response to AAFE's First Motion for Leave ("the Response") "to highlight two important points." (Doc. No. 72, PageID # 838.) The first point was that the March 8 email and February 27 email do not contain any reference to confidential information subject to the Protective Order, which "stands in stark contrast to an email sent by AAFE's Counsel just three days prior on March 5th in which AAFE's Counsel added specific language *at the time of production in the email* to indicate that the information contained therein was confidential and subject to the Protective Order."[5] (Doc. No. 72 at PageID# 839 (emphasis in original).) According to Former Counsel, this is important to show that AAFE's Counsel knew they could designate information that was being conveyed through email as confidential but did not so designate the February 27 and March 8 emails. The second point highlighted by Former Counsel in their Response is that while the March 8 email includes a representation by AAFE that AAFE's COO, Ben Schwartz, accurately identified AAFE's revenue in his deposition, "AAFE stated the exact *opposite* in its Reply," citing and quoting from Doc. No. 44, PageID# 295–93. (Doc. No. 72 at PageID# 839 (emphasis added).) According to

---

[5] Former Counsel indicated that they could file the March 5, 2024 email under seal if the Court so wished. (Doc. No. 72 at PageID# 839 n.2.) By an Order issued on July 9, 2024, the Court directed Former Counsel to file the March 5, 2024 email under seal by July 11, 2024, which they did. (Doc. Nos. 73, 74.)

6

Former Counsel, this is further evidence of AAFE's "inconsistent treatment of financial information." (*Id.*)

On July 11, 2024, AAFE filed a Motion for Leave to File the March 7, 2024, Email Regarding Financial Documents Under Seal ("Second Motion for Leave"), in which AAFE sought to file the March 7 email to show that AAFE's Counsel advised Former Counsel "that the financial information being produced was confidential." (Doc. No. 75 at PageID# 897–898.) According to AAFE, the March 7 email would demonstrate that AAFE's Counsel did indeed mark as confidential emails relating to not only non-financial information but also to financial information. That same day, the Court granted AAFE's Second Motion for Leave. (Doc. No. 76.) On July 11, 2024, AAFE filed the March 7 email, including the profit and loss statement and tax return (both marked as confidential) that AAFE's Counsel had sent to Former Counsel. (Doc. No. 77.)

## II. Legal Standard

In its Motion for Sanctions, AAFE argues that Charles and Vio "kn[e]w[] that the AAFE considered the information [in the February 27 email] to be confidential" but nevertheless publicly filed it. (Doc. No. 31 at PageID# 458.) In particular, according to AAFE, the "most relevant email is the March 8, 2024 email from Attorney Chai that summarizes the financial production provided by the AAFE" and attached the profit and loss statement and tax return, which documents Charles and Vio confirmed "are marked confidential and will not be filed." (*Id.* at PageID# 462; Doc. No. 29 at PageID# 431–32.) Because Charles and Vio instead filed the February 27 email, the information in which "unquestionably arises out of the confidential information that has been produced by the AAFE," AAFE maintains that the February 27 email is an "obvious derivative" of the confidential financial information in the March 8, 2024 email. (Doc. No. 31 at PageID# 463, 469.)

7

In their Response, Charles and Vio insist that the Protective Order was not violated since AAFE failed to designate the February 27, 2024 email and the financial information contained therein as confidential as required by the Protective Order, and they had a good faith belief that the February 27 email was required to be filed with Charles's Second Position Paper, in accordance with the Court's Standing Order. Attorney Briach averred in his Declaration attached to Former Counsel's Response that had the February 27th email been designated confidential under the Protective Order, he would not have publicly filed it. (Doc. No. 39-1, PageID# 571.) Former Counsel submits that Plaintiffs[6] did not believe the February 27 email and the financial information contained therein was confidential because AAFE had already produced financial information in its initial discovery responses that it did not designate as confidential. Former Counsel also point to the fact that after AAFE's Counsel sought sanctions associated with the filing of the February 27, 2024 email and information set forth therein, AAFE took another inconsistent action with its financial information when it failed to designate certain deposition testimony as confidential, specifically AAFE's COO, Ben Schwartz's testimony concerning AAFE's revenue, citing Mr. Schwartz's testimony at page 48 of his deposition. (Doc. No. 39 at PageID# 556, 559–60, 567.)

In its Reply, AAFE contends that the February 27 email contained "plainly confidential information" as "the result of a discovery dispute" that required AAFE's Counsel to have "extensive conversations with the client and required the client to speak with its accounting department" to produce the information contained therein. (Doc. No. 44 at PageID# 590.) AAFE insists that Mr. Schwartz's testimony was not designated confidential because he "did not have the requisite

---

[6] AAFE's Counsel refers to Charles, Vio and/or Former Counsel as "Plaintiffs" throughout its Motion for Sanctions and Reply in support thereof.

8

knowledge to testify on AAFE's financial information and was merely guessing based on limited information." (*Id.* at PageID# 591–93.) AAFE submits that it did not designate its discovery responses as confidential because the financial information contained therein was "vague" and the discovery responses were provided "before the Parties' dispute on financial information and before the AAFE conducted a deep dive into the financials to break down the revenue, costs and net income for the training center." (*Id.* at PageID# 593.)

The parties agree that the civil contempt standard articulated by this Court in *Best Process Solutions, Inc. v. Blue Phoenix Inashco USA, Inc.*, 2023 WL 7323327 (N.D. Ohio Nov. 7, 2023), should be utilized in evaluating AAFE's Motion for Sanctions. (Doc. No. 31 at PageID# 466; Doc. No. 39 at PageID# 562.) Under *Best Process*, the propriety of sanctions for a violation of a protective order that contemplates civil contempt sanctions is determined through the lens of the Court's inherent civil contempt power. 2023 WL 7323327, at *4.

In this case, as in *Best Process*, Attachment A to the Protective Order—Acknowledgement and Agreement to Be Bound—provides that "violation of the Protective Order may result in penalties for contempt of court." (Doc. No. 18 at PageID# 341.) Because the Protective Order already contemplates civil contempt sanctions, the Court will analyze the propriety of sanctions under its civil contempt power. As this Court in *Best Process* found:

> Civil contempt requires [the movant] to "demonstrate by clear and convincing evidence" that [the non-movant] "knowingly 'violated a definite and specific order of the court.'" *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). The "definite and specific" requirement means that a party "'fully understood' the meaning of a court order and yet 'chose to ignore its mandate.'" *Id.* (quoting *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967)). The Court "must construe any ambiguity in the Court's order in favor of the party charged with contempt." *Id.* If [the movant] carries its burden, then "the onus shifts to [the non-movant] to demonstrate that it was unable to comply

9

with the Court's order." *Id.* Whether to hold a party in contempt is within the sound discretion of the Court. *Id.*

2023 WL 7323327, at *4 (cleaned up).

### III. Analysis

In this case, it is undisputed that the Protective Order was a definite and specific order of this Court preventing the unauthorized disclosure of confidential information. *See NLRB v. Bannum, Inc.*, 93 F.4th 973, 979 (6th Cir. 2024). Therefore, the issue that remains is whether AAFE has demonstrated by "clear and convincing evidence" that Charles, Vio, and/or Former Counsel knowingly violated the Protective Order when Former Counsel filed on the public docket Doc. Nos. 29-1 and 30-1, which contain the February 27 email and financial information contained therein, on behalf of Charles and Vio. Resolution of this issue requires the Court to determine whether Former Counsel violated the Protective Order. If the Court finds that Former Counsel did not violate it, then the inquiry ends. If the Court finds that Former Counsel did violate the Protective Order, then the remaining question is whether Former Counsel had knowledge of the Protective Order when it violated it. *Id.* (quoting *Cincinnati Bronze, Inc.*, 829 F.2d at 591). For the reasons set forth below, the Court finds that Former Counsel did not violate the Protective Order.

The parties do not dispute that, if the February 27 email was confidential, Former Counsel's filing of it on March 8 violated the Protective Order. To determine whether Former Counsel violated the Protective Order, the Court must therefore analyze whether the February 27 email contained confidential information. In doing so, courts examine whether the producing party treated or considered the information as confidential. *See, e.g.*, *Harrell v. CheckAGAIN, LLC*, 2006 WL 5453652, at *3, *3 n.4 (S.D. Miss. July 31, 2006) (rejecting contention that party considered deposition testimony confidential due to lack of evidence that party followed the required steps for

10

designating testimony confidential under protective order); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 860 (7th Cir. 1994) (finding that party "did not consider" testimony confidential because one of party's executives "gave public testimony . . . concerning this very issue"); *Guessford v. Penn. Nat'l Mut. Cas. Ins. Co.*, 2013 WL 2242988, at *9, *9 n.13 (M.D.N.C. May 21, 2013) (finding that party "did not treat" documents as confidential where party "presented no evidence (or even proffers of evidence) that it took *any* steps to protect the confidentiality of the documents in question" (emphasis in original)); *Tex. Brine Co. v. Dow Chem. Co.*, 2018 WL 950352, at *5 n.3 (E.D. La. Feb. 20, 2018) (finding that party's claw back of inadvertently produced documents later designated "highly confidential" "underscores [the party's] seriousness about the degree of confidentiality which it attributes" to the documents and "does not indicate [that the party] failed to consider the documents confidential").

It is undisputed that AAFE did not mark on or affix to the February 27, 2024 email the words or phrase "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." The Protective Order clearly outlines the process for designating documents or other information as confidential. The designating party must affix or place "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the relevant document. (Doc. No. 18 at ¶ 2.) At the June 28 hearing on AAFE's Motion for Sanctions, AAFE provided the Court and counsel with copies of the March 8 email, as well as the attached financial documents, specifically the Anew Medspa 2120 LLC Profit and Loss and the 2022 tax return for Anew Medspa Management LLC. (June 28 Transcript I at Tr. 30–31.) These two attachments to the March 8 email include the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation. (June 28 Transcript I at Tr. 15.) Additionally, in an email sent by AAFE to Former Counsel on March 5, AAFE's Counsel specifically indicated that "[t]he documents and links

11

[contained therein] are confidential and subject to the protective order." (Doc. No. 74-1 at PageID# 845.) Further, in an email sent by AAFE to Former Counsel on March 7, to which AAFE's Counsel attached the confidential profit and loss statement and tax return, AAFE's Counsel informed Former Counsel that "[t]hese documents are confidential and subject to the protective order." (Doc. No. 77 at PageID# 902.) Thus, AAFE's Counsel knew how to mark both information included in an email as well as documents attached thereto "confidential and subject to the protective order" when they wanted to do so.

By contrast, the February 27 email contains no such designation, and again, AAFE does not contend or argue that it designated the February 27 email as confidential. (Doc. Nos. 29-1, 30-1.) Attorney Chai conceded at the June 28 hearing that he did not expressly designate the email as confidential, but explained that he did not do so because AAFE's Counsel "were trying to get [Former Counsel] inform[ation] as fast as [they] could." (June 28 Transcript I at Tr. 56.) However, this does not excuse AAFE's failure to properly designate confidential information as the Protective Order requires. In fact, the Protective Order itself provides for a temporary confidential designation if the parties so stipulate. (Doc. No. 18 at ¶ 2.) Nevertheless, AAFE failed to provide Former Counsel with any indication that the email was confidential when it was received, as Attorney Briach testified at the June 28 hearing. (June 28 Transcript I at Tr. 32, 38, 40–41; Doc. No. 39-1 at ¶¶ 5–6, 10–11 (Declaration by Attorney Briach in which he testifies that if Attorney Chai had indicated to or informed him that the February 27 email was confidential, he would have not filed it on the public docket).)

By the terms of the Protective Order, AAFE could have designated the February 27 email or its contents as confidential, but it failed to do so. Accordingly, the February 27 email was not properly

designated as confidential. *See, e.g.*, *AL Indus., Inc. v. EnvisionTEC, Inc.*, 2022 WL 19764007, at *2–4 (C.D. Cal. Feb. 16, 2022); *Krumwiede v. Brighton Assocs., L.L.C.*, 2006 WL 2644952, at *5 (N.D. Ill. Sept. 12, 2006) (no violation of protective order when non-designated documents were attached as exhibits). At no point did AAFE designate the February 27 email as confidential or indicate that all financial information would be considered confidential.

There are additional bases for finding that AAFE did not consider the February 27 email and the financial information contained therein to be confidential. First, at the June 28 hearing, during oral argument, Attorney Campbell mentioned – not once, but twice – on the record in open court, "AAFE's revenue . . . the $15 million number." (June 28 Transcript I at Tr. 21, 60.) This figure appears in the February 27 email and is one of the figures that Attorney Campbell claimed or implied was confidential at the March 11 status conference. (Doc. No. 29-1 at PageID# 437–38; Doc. No. 30-1 at PageID# 451–52; Draft of Mar. 11 Transcript ("Mar. 11 Transcript") at Tr. 37, 42–43.) Because Attorney Campbell divulged this revenue or financial information figure, twice in open court and on the record, the Court finds it unlikely that AAFE considered this figure, along with the other information included in the February 27 email, to be confidential.[7] *See Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 463 F. Supp. 2d 1073, 1081 (C.D. Cal. 2006) (collecting cases); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) ("It is well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use. . . . The references to the confidential documents made in open court may have constituted a sufficient publication.") (cleaned up); *Binney*

---

[7] During Former Counsel's Closing Argument at the hearing, he highlighted the fact that Attorney Campbell had divulged this financial information in open court; but Attorney Campbell never made a belated request to have that information sealed. (June 28 Transcript I at Tr. 67–68.)

13

*& Smith Inc. v. Rose Art. Indus.*, 1995 WL 110127, at *3 (N.D. Ill. Mar. 13, 1995) ("[W]hile the parties did agree to a protective order, they proceeded to the hearing without invoking the court's authority to seal the courtroom or to seal any of the documents presented."); *Rambus, Inc. v. Infineon Techs. AG*, 2005 WL 1081337, at *3 (E.D. Va. May 6, 2005) ("[T]he previous public use effectively stripped the documents of any protection under the protection order."); *see also Estate of Warner v. Wellpath*, 2021 WL 2042446, at *5 (S.D. Ind. May 20, 2021) ("[O]nce the Designating Party intentionally files a document in the public record and does not seek to maintain it under seal, that item is no longer confidential."). *See* (Doc. No. 18 at ¶ 3 ("Public records and other information or documents that are publicly available may not be designated as CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER.").)

Additionally, AAFE's COO Ben Schwartz testified during his deposition on February 13, 2024, regarding AAFE's financial information. (Doc. No. 39 at PageID# 561.) Yet AAFE did not designate any of his testimony as confidential within the 14-day timeframe provided by the Protective Order. Further, in the March 8 email, Attorney Chai indicated that "AAFE's revenue was confirmed by Ben Schwartz, [COO] at AAFE, during his deposition." (Doc. No. 71 at PageID# 836.) Attorney Chai later remarked, at the March 11 status conference, that Former Counsel "knew the [COO] confirmed [a disparity between financial figures provided by AAFE] in his deposition. We told them [that Dr.] Malcmacher is going to say the same thing in his deposition." (Mar. 11 Transcript at Tr. 40.)[8] These representations to Former Counsel cut against AAFE's assertions in its briefing and at

---

[8] The transcript for the March 11 status conference indicates that Former Counsel "knew the *CEO* confirmed it in his deposition." (Mar. 11 Transcript at Tr. 40 (emphasis added).) The deposition of Dr. Malcmacher, AAFE's CEO, was scheduled for March 12, 2024, the day after the status conference. The Court concludes that, despite the quoted transcription, Attorney Chai either meant or said "COO," referring to Ben Schwartz instead of Dr. Malcmacher. Thus, in

14

the June 28 hearing that Mr. Schwartz "did not have the requisite knowledge to testify on AAFE's financial information and was merely guessing based on limited information." (Doc. No. 44 at PageID# 592; June 28 Transcript I at Tr. 28.) While AAFE now contends that this is because Mr. Schwartz was "merely guessing," AAFE's failure to designate sworn testimony concerning AAFE's financial information still suggests that AAFE did not consider its financial information to be confidential at the time of the February 27 email. *See In re Air Crash at Lexington, Ky., Aug. 27, 2006*, 2009 WL 1683629, at *6 (E.D. Ky. June 16, 2009) ("Comair apparently failed to designate as confidential any portions of any deposition transcripts within ten days of receipt of the transcript. Accordingly, . . . Comair had no basis for its assertion of confidentiality. The Protective Order did not delegate to Comair the sole authority to determine what was confidential.").

Furthermore, Charles and Vio are correct that AAFE failed to designate as confidential its responses to certain of Charles and Vio's requests for production in which AAFE explained in several instances that "Anew Medspa's revenue in 2023 exceeded $600,000.00." (Doc. No. 20-2 at PageID# 360.) While Charles and Vio produced these discovery responses in relation to an earlier discovery dispute, at no point did AAFE argue that these responses contained confidential information or object to them being filed on the public docket. (*See generally* Doc. No. 21.) AAFE contends in its Reply that these revenue figures are "vague" and therefore not confidential. (Doc. No. 44 at PageID# 593.) However, even assuming that these figures are "vague," the fact remains that AAFE did not inform Charles and Vio that its financial information would be confidential and failed to designate it as such.

---

this context, Attorney Chai was explaining, consistent with his March 8 email, that Mr. Schwartz was capable of confirming AAFE's financials.

15

AAFE argues that the March 8 email, to which undisputedly confidential documents were attached, informs the Court as to whether the February 27 email is confidential because the information contained in the February 27 email is "derivative" of the confidential information in the March 8 email. (*See* Doc. No. 31 at PageID# 469.) The Court is not persuaded. As discussed above, the Protective Order provides that a document is considered, and thereby designated, "confidential" when the party places or affixes the "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation upon it. (Doc. No. 18 at ¶ 2.) Such designation must be placed or affixed on the document "prior to or at the time of the production or disclosure of the documents." (*Id.*) By its plain language, the Protective Order does not provide for the retroactive designation of documents. Because AAFE points to no authority suggesting that a party can unilaterally retroactively designate a document as confidential, the Court rejects this argument.[9]

Because the evidence before the Court shows that AAFE did not treat or consider the February 27 email as confidential, AAFE has failed to demonstrate by clear and convincing evidence that Former Counsel violated the Protective Order. *See Kelly v. Corizon Health Inc.*, 2023 WL 2058644, at *2 (E.D. Mich. Feb. 16, 2023) (denying sanctions where movant failed to carry its initial burden of showing that non-movant violated protective order when it disclosed allegedly confidential

---

[9] AAFE also contends that Charles and Vio's "motives" supply additional intent to their alleged violation of the Protective Order. (Doc. No. 31 at PageID# 465–66.) Because the Court concludes that Charles, Vio, and Former Counsel did not violate the Protective Order because the February 27 email did not contain confidential information, the Court need not reach this argument.

Additionally, at the June 28 hearing, AAFE contended that "mark[ing] every email . . . as confidential" would "greatly impact counsel." (June 28 Transcript I at Tr. 61.) But as demonstrated by its March 5 and March 7 emails, AAFE is well aware and capable of indicating within the body of the email that certain information either in the email itself or in an attachment thereto is confidential and subject to the protective order. (Doc. No. 74 at PageID# 845; Doc. No. 77 at PageID# 902.) It is unclear how AAFE's Counsel would be "greatly impact[ed]" by the need to make this designation within the body of the accompanying email.

information); *Lookout Windpower Hold Co. v. Edison Mission* Energy, 2011 WL 13238016, at *3 (W.D. Pa. Feb. 22, 2011) (protective order not violated where, in part, party produced to nonparty document that was not designated as confidential).

IV. **Conclusion**

For the reasons set forth above, the Court **DENIES** AAFE's Motion for Sanctions. (Doc. No. 31.)

**IT IS SO ORDERED.**

Date: July 16, 2024

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE